UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal No. 17-cr-123-2 (RDM/GMH) |
| **JARVELL KENT,** | ) ) ) | |
| **Defendant.** | ) ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Jarvell Kent ("Kent"), be detained pending trial pursuant to 18 U.S.C. §§ 3142(d)(1)(A)(iii), (f)(1)(A), (f)(1)(D), and (f)(1)(E). Kent has been charged by Indictment with: two counts of interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951; and two counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The Court held a detention hearing for Kent and Co-Defendant, Olona Roba ("Roba"), on July 12, 2017.

Upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Kent held without bail pursuant to 18 U.S.C. § 3142(e). This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1). The findings of fact and statements of reasons in support of the Order of Detention follow.

**FINDINGS OF FACT**

At the detention hearing, the United States proceeded by proffer based on the Indictment. The defense offered no contrary evidence on the merits of the offense, nor challenged any aspect of the government's factual proffer. Accordingly, the Court makes the following findings of fact regarding the government's investigation.

### A.  The May 4, 2017 Armed Robbery[1]

On May 4, 2017, the Metropolitan Police Department ("MPD") received a complaint of an armed robbery that occurred near the Capitol Heights Metro Station. The complainant told MPD officers that two individuals accosted him after he left the metro station. One of the individuals charged the complainant and told him that he wanted the complainant's money, while the second individual—later identified as Kent's Co-Defendant, Roba[2]—pulled out what the complainant described as a Mac-10 with an extended magazine from his backpack and pointed it at him. The complainant turned over his wallet and cell phone while the second individual brandished the firearm, and then watched as the two individuals walked away in the direction of a nearby apartment complex located on the 5900 block of Southern Avenue. The complainant described the armed individual to MPD officers as being a black male with a slim build, a goatee, and shoulder length dreadlocks. According to the complainant, he was also wearing a black bandana and a neon green jacket and carrying a black backpack.

---

[1] Though the government's proffer does not establish that Defendant Kent participated in this May 4, 2017 robbery, law enforcement's investigation into the incident uncovered evidence that is relevant to the charges that have been brought against him. Accordingly, to provide a full picture of the government's investigation into Kent's charged offenses and the events that led to the instant Indictment, the Court will include this incident in its Detention Memorandum.

[2] The government's proffer does not identify the other individual involved in the May 4, 2017 robbery.

MPD officers then showed the complainant a nine-person photo array containing a photograph of Roba and asked him to identify the armed individual involved in the robbery. The complainant was unable to choose one and instead selected three photographs—one of which was a photograph of Roba—that he said looked "[c]losest" to the individual. Additionally, as part of its investigation, MPD spoke to two witnesses. The first witness indicated that they were in the area at the time of the robbery and saw three individuals, one of whom they knew to be Roba. The witness said that they saw Roba wearing a black hoodie with a green article of clothing over it while entering an apartment located at 5930 Southern Avenue. According to this first witness, Roba regularly visited this residence and, shortly after he entered it that day, left in a different set of clothing. The second witness was also in the area at the time of the armed robbery and said that they saw Roba—who the witness knows by the name "Country"—acting suspiciously with two other individuals near that same apartment complex. When MPD showed the witness a photograph of Roba, the witness identified him as "Country" and said that they do not know his real name.

During the course of its investigation into this incident, MPD learned that someone attempted to use the complainant's debit card at a store thirteen minutes after the complainant reported the robbery. The store, which is located approximately three blocks from where the complainant was robbed, provided MPD with a copy of its video surveillance from that day. In the video, Roba can be seen entering the store in a black shirt with a white symbol and a pair of red and black basketball shoes. After entering, he attempts to make a purchase using the complainant's debit card.

### B. The May 5, 2017 Armed Robbery

Kent's current charges stem from a string of robberies, the first of which occurred on May 5, 2017. Late that night, MPD received a report of an armed robbery that occurred at the 7-Eleven convenience store located at 3218 Pennsylvania Avenue SE, Washington, D.C. An MPD detective arrived at the location and viewed a security video that shows two black males entering the store in dark clothes and masks. The first individual—later identified as Roba—can be seen in the video wearing a puffy jacket, a black shirt with a white symbol identical to the shirt worn by Roba on May 4, 2017, bright green gloves, dark pants, and grey and purple basketball shoes. The individual is also wearing a black mask that leaves part of his nose, cheeks, and eyes exposed, and carrying a black sub-machine gun with a curved extended magazine. The second individual in the video—later identified as Kent—can be seen wearing a black jacket with a hood, black gloves, black shoes with a white symbol and white soles, and a black mask that leaves part of his nose, cheek, and eyes exposed. The video shows the two individuals enter the store and approach the cash register. The individuals then order the store clerk to open the cash register, remove an unknown amount of cash, and flee. MPD officers obtained a copy of this video and posted it on MPD's YouTube page, hoping to solicit leads.

### C. The May 11, 2017 Armed Robbery

Less than a week later, in the early morning of May 11, 2017, MPD received a report of an armed robbery at another 7-Eleven convenience store, this one located at 4443 Benning Road NE, Washington, D.C. An MPD detective arrived at the location and viewed the store's security footage of the robbery. In the video, the detective observed two males enter the store wearing dark clothing, gloves, and masks. The first individual is wearing a black shirt and dark pants, as well as bright green gloves and a black mask similar to the gloves and mask that Roba can be seen

4

wearing in the video of the May 5, 2017 robbery. This individual is also wearing red and black basketball shoes similar to the shoes worn by Roba on May 4, 2017, and is carrying a black semi-automatic handgun. The second individual is wearing clothes similar to those worn by Kent during the May 5, 2017 robbery—including a black shirt, a mask, and black shoes with a white symbol and white soles—and is carrying a semi-automatic firearm resembling a Tec 9 with a curved extended magazine. This second individual is also wearing a puffy jacket similar to the jacket worn by the armed individual—later identified as Roba—during the May 5, 2017 robbery.

### D. MPD's Investigation

On May 14, 2017, MPD received an anonymous tip in response to the robbery footage posted on YouTube. The tipster referenced the apartment located at 5930 Southern Avenue, which Roba was seen running into following the May 4, 2017 armed robbery, and described the two individuals in the video using the name "Jarveil" and the nickname "Country." Law enforcement officers searched the MPD database for the name "Jarveil," but their query returned only one result for Jarvell Kent. MPD then received a second tip the next day identifying the two individuals in the May 5, 2017 video as "Jarvell Kent" and "Olona E. Roba." According to this second tipster, both individuals routinely hang out at the apartment located at 5930 Southern Avenue. Based on these tips, MPD pulled photographs of Kent from law enforcement databases and compared them to still images of the individual wearing black shoes with white soles in the footage of the May 5, 2017 armed robbery. MPD officers concluded that Kent's facial features are consistent with the portions of the individual's face that can be seen in that video, and that Kent's build and size are consistent with the individual's proportions as well. Law enforcement did the same with still images of Roba attempting to use a stolen debit card on May 4, 2017 and the still images of the individual wearing a black shirt with a white symbol during the May 5, 2017 robbery, concluding

5

that Roba's face and approximate size and build are consistent with those of the armed, partially-masked individual.

Law enforcement then obtained a warrant from D.C. Superior Court to search the residence located at 5930 Southern Avenue SE, Washington, D.C. Officers executed the warrant on May 19, 2017, and recovered a neon colored jacket similar to the one described as being worn by the gunman involved in the May 4, 2017 robbery, as well as Roba's passport and a 9 millimeter semi-automatic firearm, both of which were located in the same bedroom. According to the government, the firearm recovered during the search is similar in appearance to the black semi-automatic hand-gun seen in the footage of the May 11, 2017 robbery.

On May 22, 2017, a third witness voluntarily spoke with an MPD detective regarding these incidents. The MPD detective showed the witness images from the videos of the May 5, 2017 and May 11, 2017 7-Eleven robberies, and the witness identified the individual seen in both videos wearing black shoes with a white mark and white soles as Kent. The witness claimed to be related to Kent and said that they immediately recognized him based on his eyes, the shape of his head, his build and size, and his manner of walking. When questioned further, the witness indicated that they were "100 percent" certain that the individual was Kent, but did not recognize the other person in the footage. MPD officers also showed the video of the May 5, 2017 armed robbery to the witnesses they had spoken to previously regarding the May 4, 2017 robbery outside the Capitol Heights Metro Station. Both witnesses identified the individuals in the video footage as Defendants Roba and Kent.

### E.     Kent's Arrest and Procedural Background

Based on the above, law enforcement arrested Defendant Kent on May 25, 2017, and Defendant Roba the day after. Following Defendant Kent's arrest, law enforcement informed him of

his *Miranda* rights and conducted a recorded interview. During the interview, Kent admitted that he and Defendant Roba had committed the two armed robberies of the 7-Eleven stores, and that Roba had told him that he committed the May 4, 2017 armed robbery outside the Capitol Heights Metro Station. Defendant Roba provided a recorded interview while in custody as well, and images from the recording establish that he was wearing a black shirt with a white symbol that is identical to the shirt that he is wearing in the May 4, 2017 surveillance video and that can be seen in the May 5, 2017 robbery footage. Both Defendants were originally charged in D.C. Superior Court—Defendant Kent with two counts of armed robbery and Defendant Roba with three counts of armed robbery—and Kent was ordered to be held following a detention hearing.

On June 27, 2017, a federal grand jury returned the instant Indictment, resulting in the dismissal of Defendant Roba and Kent's armed robbery charges in D.C. Superior Court. Presently, Kent stands charged with four offenses related to the above conduct: two counts of interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951; and two counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). At Kent's initial appearance, the government moved for pretrial detention and, on July 12, 2017, the Court heard arguments from both parties on the government's motion.

At the hearing in this matter, the government submitted two pieces of evidence for the Court's consideration. The first is an alleged violations report drafted by the Court Services and Offender Supervision Agency for the District of Columbia. The report details Kent's January 2017 conviction for possession of cocaine in D.C. Superior Court and his alleged violations of the conditions of his two-year term of "intensive" probation for that offense, which began on February

21, 2017.³ The second piece of evidence is a summary of Kent's compliance while on high-level supervised probation in Maryland following his conviction for the unlawful taking of a motor vehicle in October 2016, and his alleged violations of the conditions of that supervision.⁴ The government also proffered that Defendants Roba and Kent are currently under investigation for two additional, un-charged offenses—one armed robbery of a Denny's restaurant located at 4445 Benning Road NE, Washington, D.C., on April 28, 2017, and another armed robbery of a carryout driver on March 4, 2017. With respect to the latter robbery, the government alleges that the call that lured the carryout driver to the location of the robbery—5836 South Avenue SE, Washington, D.C.—came from a phone number associated with Kent, and paperwork with Roba's name on it was found in front of that address. Additionally, according to the government, Kent—but not Roba—became a suspect in a May 14, 2017 armed robbery of another 7-Eleven convenience store in Washington D.C., after law enforcement identified him as the source of a latent fingerprint found near the cash register.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant]

---

³ The report alleges that, in April and May of 2017, Kent failed to report for drug testing on six occasions, failed to report for supervision on three occasions, used a controlled substance once, and failed to obey the laws when he was charged with the conduct described in this Detention Memorandum, all in violation of the terms of his probation.

⁴ Specifically, the summary alleges that Kent violated the conditions of his supervision in Maryland when he: : (1) failed to report to his supervising agent on five occasions between December 2016 and May 2017; (2) failed to work or attend school regularly; (3) failed to seek permission from his supervising agent before leaving the state of Maryland; (4) failed to obey the laws when he was arrested for the offenses described herein; (5) failed to seek permission from his supervising agent before obtaining possession of a firearm; and (6) failed to make payments toward his supervisions fees.

before trial." 18 U.S.C. § 3142(e). Thus, even absent a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 489 U.S. 739, 755 (1987); *see also United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). Where the justification for detention is the judicial officer's finding that no set of conditions will assure the defendant's appearance in court, such a decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Through the Bail Reform Act, Congress has instructed that a judicial finding of probable cause to believe that a defendant has committed certain types of offenses—including any offense charged under section 18 U.S.C. § 924(c), such as brandishing a firearm during a crime of violence—gives rise to a rebuttable presumption that the defendant constitutes a danger to the community and that no pretrial release condition or combination of conditions may be imposed to reasonably assure the appearance of the person as required or the safety of the community if he were released. *See* 18 U.S.C. § 3142(e)(3)(B); *see also United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986) (holding that a grand jury indictment established probable cause sufficient to create a rebuttable presumption under section 3142(e)).

Once the rebuttable presumption is triggered, it imposes a burden of production on the defendant "to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). As this Court recently emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016)

9

(citations omitted).  Thus, some actual evidence and not mere speculation must be offered to rebut the presumption.  In the face of the presumption, which "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'" *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress' general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

That said, the burden of persuasion on the issue of detention remains, as always, with the government.  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  But even where the defendant offers evidence to rebut the presumption, the presumption is not erased.  Rather, the "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight."  *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (recognizing that the section 3142(e) presumption does not disappear when rebutted, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)").

## ANALYSIS

### A. Application of the Rebuttable Presumption

The government maintains that pretrial detention is appropriate for Kent pursuant to 18 U.S.C. §§ 3142(e)(3)(B), (f)(1)(A), (f)(1)(D), and (f)(1)(E).  Specifically, the government notes

that Kent's charged offenses include brandishing a firearm during a crime of violence, which triggers the rebuttable presumption, and interference with interstate commerce by robbery, which qualifies as a crime of violence that carries a maximum term of imprisonment of up to twenty years. Based on the arguments raised before the Court at the detention hearing, there appears to be no dispute that the second and fourth counts of the instant Indictment—brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)—give rise to a rebuttable presumption of dangerousness and fugitivity pursuant to 18 U.S.C. § 3142(e)(3)(B). Nevertheless, in response to the presumption, Kent asserts that it is not clear from the footage of the May 5, 2017 and May 11, 2017 robberies that he is one of the individuals involved. He also explains that, although he is on supervised release in two other cases, the terms of supervision in either case do not provide for electronic monitoring. Accordingly, and in lieu of pretrial detention, he requests that the Court release him to live with his godmother, who has agreed to host him in Capitol Heights, and place him on supervised release.

Having heard the government's proffer and Kent's defense, the Court finds that Kent has failed to rebut the presumption of dangerousness raised by his charges. Specifically, the Court finds that placement in his godmother's house would be unsuitable for Kent. Indeed, the Court is unconvinced, based on the record before it, that Kent's placement at his godmother's house would reduce the likelihood of future criminal activity. After all, Kent was on "high" or "intensive" levels of supervision in two separate jurisdictions, albeit without electronic supervision, when he allegedly participated in the various armed robberies outlined above. Further, according to the summary of his supervision in the state of Maryland provided by the government, it appears that Kent was living with his godmother when he allegedly engaged in the offending conduct, which involved the use of two distinct firearms. Moreover, given Kent's demonstrated history of non-

11

compliance with the terms of his supervised release in his prior cases, the Court sees little reasons to believe that he will comply with any conditions imposed on him should he be released here. Accordingly, and without more from Kent, the Court finds that he has not met his burden of production to produce some credible evidence contrary to the statutory presumption of dangerousness. As a result, Congress's assessment of the danger posed to the community by individuals who, like Kent, have been charged with federal crimes under 18 U.S.C. § 924(c) is itself a sufficient reason to hold Kent without bond pending trial in this matter. *See Alatishe*, 768 F.2d at 371; *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (presumption "represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

### B.     Application of the Section 3142(g) Factors

Even had Kent rebutted the presumption, the Court would still find that he should be detained during the pendency of this case. In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Further where, as here, a rebuttable presumption applies, the Court should give the presumption "substantial weight" in the section 3142(g) analysis even if the defendant has met his or her burden of providing some credible evidence to the contrary. *Ali*, 793 F. Supp. 2d at 291. As demonstrated below, a weighing of all of these factors compels the conclusion that Kent should be detained pending trial.

*1.     Nature and Circumstances of the Charged Offenses*

The first factor, the nature and circumstances of the charged offenses, favors detention. As described in detail above, Kent is charged with multiple federal offenses that are both serious and violent in nature. According to the government's proffer, Kent participated in no less than two armed robberies in which the victims were held at gunpoint. Indeed, these charges involve the brazen use of semi-automatic weapons in public convenience stores while other people were present. Equally troubling is the frequency of these alleged offenses given the relevant timespan. Kent is charged with committing two armed robberies in six days, both in the presence of innocent bystanders, and the government has proffered that he may have been involved in three others—including one that involved luring a victim to an address for the specific purpose of committing an armed robbery and another that allegedly occurred just days after the last charged armed robbery here—in March, April, and May of 2017. Reflecting the seriousness and regularity of the charged conduct is the possible fifty-four year term of incarceration Kent faces if found guilty of each charged count in the Indictment. Accordingly, the undersigned finds that this first factor calls for detention.

*2.     The Weight of the Evidence*

The weight of the government's evidence also favors detention, as the government's case against Kent is strong. The two robberies for which both Defendants are charged involve clear video surveillance footage of Defendants Roba and Kent. While Kent's face is partially covered by a mask in these videos, the government has represented that multiple witnesses who have significant experience interacting with him have identified Kent as one of the suspects. Moreover,

13

Kent confessed to law enforcement that he and Roba robbed the 7-Eleven stores in question. Taking all this into consideration, the Court finds that the government's evidence is sufficient to justify Kent's detention pending trial here.

### 3. *The History and Characteristics of the Defendant*

The history and characteristics of Kent also favor detention. At the time he allegedly committed these armed robberies, Kent was on high-intensity probation in two separate jurisdictions. Indeed, on October 21, 2016, Defendant was sentenced to two years of incarceration—suspended in its entirety—followed by two years of high-level supervised probation in Prince George's county, Maryland for the unlawful taking of a motor vehicle. Moreover, according to his supervising officers, Kent repeatedly failed to comply with the terms of his supervised release, failing to report to his supervising officer, failing to seek permission before leaving the state of Maryland, and failing to find work or attend school regularly. At the same time, Kent was also on intense supervision in the District of Columbia after receiving a suspended sentence for the misdemeanor possession of cocaine. Kent had been on supervision for less than three months at the time of the above offenses and, according to an alleged violations report, had already violated the conditions of his release on a number of occasions. Based on this history of noncompliance with the conditions of supervised release, the Court finds that pretrial detention would be appropriate under this factor.

### 4. *The Danger to the Community*

The fourth factor, the danger to the community, also weighs in favor of detention. Based on the government's proffer, Kent has engaged in a pattern of criminal behavior that demonstrates an alarming lack of concern for the safety of others. According to the above, Kent participated in no less than two armed robberies within the period of one week, and did so in the vicinity of

innocent bystanders. The government's proffer further establishes that Kent's violent conduct potentially extended beyond this one week period, as he is being investigated for three other armed robberies that occurred under similar circumstances in March, April, and May of 2017. Moreover, law enforcement's investigation into this matter has tied Kent to at least two different firearms. Notably, these offenses all allegedly occurred while Kent was already on high-level supervision in two other jurisdictions. Accordingly, the Court believes that there is no condition or combination of conditions that would reasonably assure the safety of the community if Kent were released.

## CONCLUSION

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), of the statutory presumption applicable here, and of all less-restrictive alternatives to pretrial detention, this Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of the community. Therefore, the government's motion for pretrial detention is granted.

Date: July 17, 2017                                     _____
                                                      G. MICHAEL HARVEY
                                                      UNITED STATES MAGISTRATE JUDGE